HERMINIO MARTÍNEZ RODRÍGUEZ, demandante y recurrido, *v.* AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO (A.E.E.), demandada y recurrente.

*Número:* RE-92-390      *Resuelto:* 30 de junio de 1993

*Karen M. Loyola Peralta,* abogada de la recurrente; *Luis Toro Goyco,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Recurre ante nos la Autoridad de Energía Eléctrica (en adelante la Autoridad) de una sentencia del Tribunal Superior, Sala de Ponce, que determinó que el Sr. Herminio Martínez Rodríguez cumplió con los requisitos del Art. XIV del Convenio Colectivo entre la Unión de Trabajadores de la Industria Eléctrica y Riego de Puerto Rico (Independiente) y la Autoridad de Energía Eléctrica (en adelante Convenio Colectivo) para acogerse a la licencia sindical con paga. Por consiguiente, condenó a la recurrente a pagar al recurrido la suma de veintitrés mil dólares ($23,000) en concepto de salarios devengados desde el 14 de noviembre de 1986 hasta el 1988,[1] más una suma igual en concepto de la penalidad dispuesta por la Sec. 30(a) de la Ley Núm. 96 de 26 de junio de 1956, según enmendada, 29 L.P.R.A. sec. 246b(a), así como intereses legales, desde que surgió la reclamación, y los honorarios de abogado. Revocamos.

## I

Allá para el 1983, el Sr. Herminio Martínez Rodríguez fue electo Presidente de la Unión de Trabajadores de la Industria Eléctrica y Riego (en adelante la Unión). Desde entonces, se acogió a la licencia sindical sin paga dispuesta por la Sec. 28 del Art. XIV del Convenio Colectivo entonces vigente entre la Unión y la Autoridad.[2]

---

[1] De la sentencia no se desprende la fecha exacta en el 1988 que se utilizó para el cómputo del monto de los salarios que serán pagados.

[2] Dispone la Sec. 28 del Art. XIV del Convenio Colectivo entre la Unión de Trabajadores de la Industria Eléctrica y Riego de Puerto Rico (Independiente) y la

En octubre de 1986, el señor Martínez informó al Ing. Carlos Alvarado, Director Ejecutivo de la Autoridad, su intención de reintegrarse a su puesto como Cobrador de Cuentas Atrasadas de la Sección Comercial Ponce-Villa, a partir del próximo 14 de noviembre. Expresó, además, su intención de, en lo sucesivo, acogerse a la licencia sindical con paga dispuesta por la Sec. 1 del Art. XIV del Convenio Colectivo,(³) conforme al laudo emitido el 31 de marzo de 1986 por el árbitro Edgardo Cruz Fortier, del Negociado de Conciliación y Arbitraje, en el caso *Autoridad de Energía Eléctrica y Unión de Trabajadores de la Industria Eléctrica y Riego*, Caso Núm. A-1535.(⁴) La Autoridad accedió a la petición del señor Martínez, más le advirtió que debería

---

Autoridad de Energía Eléctrica (en adelante Convenio Colectivo):

"... La Autoridad concederá Licencia sin Paga (Separación Voluntaria de Empleo y Sueldo Autorizada por Tiempo Definido) para fines sindicales a aquellos empleados regulares miembros del Consejo Estatal, según definido al 14 de octubre de 1980, o puestos directivos equivalentes de la Unión. Esta Licencia será utilizada única y exclusivamente para la representación de los miembros de la U.T.I.E.R. en sus relaciones obrero patronales con la Autoridad en asuntos oficiales de la Unión, y la misma se concederá bajo las condiciones establecidas, según Estipulación entre las partes firmada el 15 de agosto de 1980 y enmendada el 16 de octubre de 1980.

"La Autoridad le reservará al empleado el puesto y clasificación que éste ocupe al momento en que se concede dicha Licencia y le acreditará el tiempo que esté en esta Licencia para efectos de antigüedad y años de servicio.

"El empleado· deberá notificar a la Autoridad con treinta (30) días de anticipación su intención de dar por terminada esta Licencia y reintegrarse a su plaza."

(³) En su parte pertinente, el referido Art. XIV del Convenio Colectivo, titulado "Licencia a Oficiales y Representantes de la Unión", dispone del modo siguiente:

"*Sección 1.* Cuando los oficiales o representantes de la Unión tengan que discutir asuntos oficiales de la misma o querellas con el Director Ejecutivo, con los jefes de divisiones o sus representantes autorizados, se les concederá licencia con paga sin cargo a sus vacaciones acumuladas. Esta licencia se concederá también cuando los oficiales del Consejo Estatal de la Unión tengan necesidad de reunirse el día antes en relación con asuntos a discutirse en la Junta Consultiva creada en este convenio o con el Director Ejecutivo.

.    .    .    .    .    .    .    .

"Sección 3. Los oficiales o representantes de la Unión notificarán la necesidad de su ausencia de su trabajo al supervisor inmediato."

(⁴) El citado laudo puso fin a una controversia anterior similar en torno a la manera de implantar la licencia sindical con paga del Art. XIV del Convenio Colectivo de la Autoridad de Energía Eléctrica (en adelante la Autoridad). Resolvió que la Autoridad puede exigirle a los empleados que opten por acogerse a esa licencia que se presenten antes a su sitio normal de trabajo, para informar personalmente a su supervisor inmediato de la necesidad de ausentarse para reunirse con un funcionario de la Autoridad para discutir asuntos de la Unión de Trabajadores de la Industria Eléctrica y Riego (en adelante la Unión).

cumplir a cabalidad con el procedimiento que rige la concesión de licencias a Oficiales de la Unión.

Desde el 20 de noviembre de 1986 hasta el 15 de enero de 1988, el señor Martínez remitió, semana tras semana, una notificación escrita a su supervisor inmediato en que le informaba de sus actividades semanales como Presidente de la Unión. Durante esos años, no se presentó personalmente a su sitio normal de trabajo ni se ocupó de obtener y remitir a su supervisor inmediato una certificación del tiempo utilizado para la reunión.

Surgió, entonces, una controversia en torno a si el señor Martínez estaba o no cumpliendo con el procedimiento que rige la concesión de licencias sindicales con paga. Martínez entendía que la notificación semanal por escrito era suficiente. Reclamó sus salarios a partir de 14 de noviembre de 1986. La Autoridad entendía que la notificación tenía que hacerse personalmente al supervisor inmediato, luego de presentarse a su sitio normal de trabajo. Entendía además que, luego de finalizar las gestiones oficiales de la Unión, el señor Martínez tenía que regresar a su sitio normal de trabajo. Una vez allí, tenía que presentar a su supervisor inmediato una certificación del tiempo utilizado en la reunión, expedida por el funcionario de la Autoridad con quien se reunió.

La controversia se sometió a arbitraje conforme al Procedimiento de Resolución de Querellas y Arbitraje del Convenio Colectivo. El 25 de octubre de 1988, el árbitro Simeón Villalba, del Negociado de Conciliación y Arbitraje, emitió el correspondiente laudo.[5] Rehusó asumir la juris-

---

Según el laudo, lo que no puede hacer la Autoridad es exigir al representante que pida permiso escrito a su supervisor, ya que la obligación de conceder la licencia surge automáticamente con la necesidad del representante de acudir a una reunión. No obstante, el laudo sujeta la concesión de la licencia a los acuerdos entre las partes. Dichos acuerdos disponen, *inter alia*, que el funcionario con quien se reúna el representante preparará una certificación de la duración y asunto de la reunión. El representante tendrá el deber de entregársela a su supervisor cuando regrese a su trabajo.

[5] *A.E.E. y U.T.I.E.R.*, Caso Núm. A-733.

dicción sobre la controversia, por entender que el caso ante sí era el mismo sometido ante la Junta de Relaciones del Trabajo (en adelante la Junta) por el señor Martínez. Señaló que ambos cuestionaban idéntica actuación de la Autoridad y conllevarían un remedio monetario, a saber, el pago de los salarios del señor Martínez. Explica la opinión:

> ... [A]mbos cuestionan un mismo proceder: que la Autoridad no reconoce la licencia acordada en el Artículo XIV, Sección 1 al no pagarle la misma al Presidente Herminio Martínez (en el cargo ante la JRT se expresa "al no permitirle" que para todo efecto tiene el mismo significado por cuanto si no la paga no la permite). Laudo A-733, Solicitud de revisión, Apéndice 6, pág. 59.

El caso ante la Junta al que se refería el árbitro Simeón Villalba en el laudo, lo instó el propio señor Martínez, como representante de la Unión, el 19 de octubre de 1987. *A.E.E. y U.T.I.E.R.*, Caso Núm. CA-87-108. En su petición, la Unión alegó que la Autoridad había incurrido y continuaba incurriendo en prácticas ilícitas del trabajo. Específicamente, imputó que la negativa de la Autoridad a reconocerle la licencia sindical con paga a varios representantes de la Unión contravenía el convenio colectivo. Como uno de los representantes afectados se incluyó al señor Martínez.

El 14 de febrero de 1990, el Presidente de la Junta emitió un aviso de desestimación de cargo. Sostuvo la facultad de la Autoridad para instrumentar la manera de implantar la licencia sindical con paga bajo el Art. XIV. Señaló que, conforme al laudo emitido en el caso *A.E.E. y. U.T.I.E.R.*, Caso Núm. A-1535, la Autoridad puede exigir que un empleado se presente a su lugar acostumbrado de trabajo antes de poder iniciar las gestiones oficiales de la Unión que dispone el Art. XIV del Convenio Colectivo, a menos que la propia Autoridad le convocara previamente. El señor Martínez no había cumplido con esa exigencia.

En vista de lo anterior, el Presidente de la Junta determinó que la Autoridad no incurrió en violación alguna del Art. XIV del Convenio Colectivo al negarse a reconocer al

señor Martínez derecho alguno a la licencia sindical con paga. Por lo tanto, desestimó el cargo. El 19 de junio de 1990, la Junta en pleno declaró no ha lugar la solicitud de revisión de la Unión. Expresó: "Hemos considerado detenidamente la Solicitud de Revisión con sus anejos y argumentos, a la luz del expediente. Los mismos no nos mueven a variar la determinación previa tomada en el caso." Solicitud de revisión, Apéndice 9, pág. 69. Confirmó así el aviso de desestimación de cargo y ordenó el cierre del caso.

Así las cosas, el 20 de agosto de ese año el señor Martínez instó una querella contra la Autoridad ante el Tribunal Superior, Sala de Ponce. Invocó el procedimiento sumario para la reclamación de compensación por servicios prestados dispuesto en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. secs. 3118–3132. Alegó que había cumplido con los requisitos para obtener una licencia sindical con paga bajo el Art. XIV del Convenio Colectivo. Le imputó a la Autoridad el no haber querido reconocerle nunca dicha licencia ni pagarle el salario correspondiente. Adujo haber agotado todos los remedios administrativos sin que se dilucidara su reclamación, ya que el árbitro desestimó la controversia por falta de jurisdicción, y la Junta desestimó el cargo.

El señor Martínez reclamó remedios al amparo de la Sec. 30 de la Ley Núm. 96, *supra*.([6]) Específicamente, reclamó la suma de veintitrés mil dólares ($23,000) en concepto de salarios devengados desde el 14 de noviembre de 1986 al 1988, más una suma igual en concepto de la penalidad impuesta en el inciso (a) de la referida Sec. 30 e in-

---

([6]) El inciso (a) de la Sec. 30 de la Ley Núm. 96 de 26 de junio de 1956 (29 L.P.R.A. sec. 246b(a)), dispone:

"... Todo obrero o empleado que por su trabajo reciba compensación inferior a la prescrita en ... un convenio colectivo ... tendrá derecho o[sic] cobrar mediante acción civil la diferencia adeudada hasta cubrir el importe total de la compensación que le corresponda, por concepto de salario, vacaciones, licencia por enfermedad o cualquier otro beneficio, más una cantidad igual a la que se le haya dejado de satisfacer, por concepto de compensación adicional, además de las costas, gastos...y honorarios de abogado del procedimiento, estos últimos en suma razonable que nunca bajará de cincuenta (50) dólares, sin que para nada de ello obste pacto en contrario."

tereses legales desde que surgió la causa de acción. Reclamó, además, honorarios de abogado al amparo de la Ley Núm. 402 de 12 de mayo de 1950, según enmendada, 32 L.P.R.A. sec. 3114 *et seq.*

El foro de instancia acogió la solicitud del señor Martínez. Concluyó que la Autoridad había violado el Convenio Colectivo al negarse a reconocer la licencia sindical con paga y no pagar los salarios correspondientes. Concedió los remedios solicitados por el señor Martínez. De dicha decisión acude ante nos la Autoridad, señalando la comisión de varios errores.

Primeramente, señalan que erró el Tribunal Superior porque hizo caso omiso del procedimiento que se ha seguir para la concesión de la licencia sindical con paga dispuesto por el laudo emitido en el caso *U.T.I.E.R. y A.E.E.,* Caso Núm. A-1535. Como segundo error, señalan que el foro de instancia se equivocó al concluir que el señor Martínez cumplió con los requisitos dispuestos en el laudo A-1535 para obtener licencias sindicales con paga, porque hizo caso omiso de los acuerdos entre las partes incorporados a ese laudo por referencia. Como tercer error, señalan que el tribunal no tenía jurisdicción sobre la materia y que la jurisdicción exclusiva la tiene la Junta. Finalmente, señalan que erró dicho foro al no acoger el planteamiento de cosa juzgada.

## II

A. Por ser dispositivo del caso de marras, revisaremos primero si erró el Tribunal Superior al asumir jurisdicción sobre la controversia ante nos. Aduce la Autoridad que la controversia versa sobre una imputación de práctica ilícita del trabajo. Alega que el derecho a reclamar salarios en este caso depende de que se haga una determinación previa de que ella violó el convenio colectivo. Concluye, por lo tanto, que correspondía a la Junta dilucidar la controver-

sia, en el ejercicio de su jurisdicción exclusiva, para determinar si hubo prácticas ilícitas del trabajo. Finalmente, señala que permitir que el tribunal asuma jurisdicción en este pleito constituiría un subterfugio para revisar el aviso de desestimación de cargo. Invoca nuestra decisión en *Luce & Co. v. Junta de Relaciones del Trabajo*, 82 D.P.R. 96 (1961), para sostener su posición de que la desestimación de un cargo es una decisión irrevisable de la Junta por no ser una orden final.

Por su parte, el señor Martínez reclama la protección del debido procedimiento de ley para justificar la jurisdicción del tribunal de instancia. Alega que antes de acudir al foro judicial aún no había tenido su día en corte, a pesar de que había agotado todos los remedios dispuestos en el Convenio y en la ley.

En apoyo de su contención, señala que el árbitro se negó a asumir jurisdicción por estar pendiente ante la Junta un cargo por los mismos hechos. Aduce, además, que la decisión de la Junta tampoco le brindó su día en corte, ya que él no fue parte en ese procedimiento y no se le concedió una vista antes de desestimar el cargo. Finalmente, señala que la desestimación de cargo es inapelable según *Luce & Co. v. Junta Relaciones del Trabajo*, supra, porque no es una decisión final de la Junta. Por lo tanto, tampoco podría obtener su día en corte mediante la revisión judicial. Concluye, pues, que de no reconocer que el tribunal de instancia tenía jurisdicción para entender en la controversia, él quedaría privado de su propiedad sin un debido proceso de ley.

Por último, el señor Martínez plantea que la suya es una reclamación de derechos privados y no públicos. Es decir, argumenta que no imputa la violación del Convenio Colectivo, lo cual correspondería dilucidar a la Junta, sino que se limita a exigir que se le paguen sus salarios. Alega que ese tipo de derecho privado sí es exigible ante un foro judicial. No tiene razón.

■ B. La Junta tiene jurisdicción exclusiva para evitar y remediar practicas ilícitas de trabajo. Art. 7(a) de la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945 (29 L.P.R.A. sec. 68(a)); *P.R.T.C. v. Unión Indep. Emp. Telefónicos*, 132 D.P.R. 171 (1992); *J.R.T. v. A.C.A.A.*, 107 D.P.R. 84, 89 (1978); *U.T.I.E.R. v. J.R.T.*, 99 D.P.R. 512, 519 (1970). Tal es el caso de las reclamaciones de salarios que surgen como resultado de las actuaciones del patrono que alegadamente contravienen el Convenio Colectivo. Este Tribunal ha resuelto que dichas reclamaciones imputan realmente una práctica ilícita del trabajo. Corresponde, pues, a la Junta resolverlas mediante el ejercicio de su jurisdicción exclusiva. *Vega Colón v. Corp. Azucarera de P.R.*, 123 D.P.R. 859 (1989); *J.R.T. v. Hosp. La Concepción*, 114 D.P.R. 372, 381 (1983).

■ La Ley de Relaciones del Trabajo de Puerto Rico dispone que la jurisdicción exclusiva de la Junta sobre prácticas ilícitas del trabajo no será afectada por ningún otro medio de ajuste o prevención. No obstante, la propia Junta ha adoptado la doctrina de agotamiento de remedios contractuales. Eso significa que, antes de llevar un cargo ante la Junta, las partes deben agotar los remedios dispuestos en el Convenio Colectivo para resolver la controversia en cuestión. De lo contrario, la Junta rehusará asumir jurisdicción, a menos que el agotamiento resulte ser un gesto fútil y vacío, irreal o imposible, o que la Unión falte a su deber de una justa representación. *J.R.T. v. A.C.A.A.*, supra, pág. 90; *Pagán v. Fund. Hosp. Dr. Pila*, 114 D.P.R. 224, 231–232 (1983).[7]

---

[7] La Junta ha sido flexible en la aplicación del requisito de agotamiento cuando el Convenio deja a las partes la discreción en cuanto a si acuden o no a arbitraje, y cuando una parte no ha alegado que no se han agotado los remedios. También ha eximido del requisito de agotamiento cuando una parte protesta una violación al Convenio Colectivo con otra violación o hace caso omiso de los requerimientos de la otra para someterse a arbitraje. Finalmente, la Junta ha dispensado de agotar los remedios contractuales cuando surge un *impasse* en el Comité de Ajuste. *J.R.T. v. A.C.A.A.*, 107 D.P.R. 84, 91–92 (1978). [001a]

■ Este Tribunal no ha titubeado en poner en vigor el requisito de agotamiento de remedios contractuales que presupone una intervención de la Junta. Véase, *e.g.*: *Hermandad Unión de Empleados v. F.S.E.*, 112 D.P.R. 51, 53–54 (1982); *San Juan Mercantile Corp. v. J.R.T.*, 104 D.P.R. 86 (1975). Similarmente, hemos determinado que las partes deben agotar los remedios contractuales aun antes de acudir a los tribunales, salvo que exista justa causa. *Pagán v. Fund. Hosp. Dr. Pila*, supra, pág. 234; *Pérez v. Autoridad de Fuentes Fluviales*, 87 D.P.R. 118, 127 (1963). Ello responde a varias razones tanto del derecho de obligaciones y contratos como de orden público.

■ Primeramente, el Convenio Colectivo es la ley entre las partes. El compromiso allí consagrado de someter una querella a arbitraje obliga a ambas partes por igual y debe ser observado siempre antes de presentar la controversia ante el foro judicial. Segundo, el arbitraje es parte integrante del procedimiento de negociación colectiva. Es el mecanismo que las partes han escogido como idóneo para la resolución de sus disputas. Además, constituye un medio más apropiado y deseable que los tribunales para la resolución de controversias que emanan de la relación contractual entre las partes, ya que es menos técnico, más flexible y menos oneroso. *Pérez v. Autoridad Fuentes Fluviales*, supra, págs. 122, 124–125 y 127. Por todo lo anterior, en Puerto Rico existe una vigorosa política pública a favor del arbitraje obrero-patronal. *Pagán v. Fund. Hosp. Dr. Pila*, supra, pág. 232.

Expuesta la normativa procesal, pasemos a aplicarla a los hechos ante nos.

C. El señor Martínez reclama el pago de salarios en concepto de la licencia sindical con paga. Para dilucidar su reclamo es necesario interpretar el convenio colectivo, los acuerdos que lo complementan y el laudo A-1535 que lo interpreta. Alega el señor Martínez que, según su interpretación de los referidos documentos, él cumplió con los re-

quisitos para ser acreedor de la licencia sindical con paga. Aduce que la Autoridad incumplió con su obligación de reconocer y pagar la licencia bajo el Art. XIV del Convenio Colectivo.

En vista de esas alegaciones, forzoso es concluir que la querella presentada ante el tribunal imputa una violación al Convenio Colectivo, lo cual constituye una práctica ilícita de trabajo al amparo del inciso (1)(f) del Art. 8 de la Ley de Relaciones del Trabajo de Puerto Rico, 29 L.P.R.A. sec. 691(f). Correspondía dilucidarlo a la Junta en el ejercicio de la jurisdicción exclusiva que sobre dicha materia le ha conferido la ley.

En efecto, el señor Martínez instó un cargo ante la Junta, su Presidente lo desestimó y esa decisión fue ratificada por la Junta en pleno. Su negativa a expedir la querella respondió a que no encontró que la Autoridad hubiese incurrido en la práctica ilícita imputada. El señor Martínez no podía entonces acudir ante el foro judicial y presentar el mismo planteamiento de práctica ilícita del trabajo. Abrir las puertas de los tribunales para que entiendan en el mismo planteamiento por el cual la Junta se negó a expedir querella, crearía un subterfugio para revisar los avisos de desestimación de cargo, en contra de lo resuelto en *Luce & Co. v. Junta Relaciones del Trabajo,* supra. Ese subterfugio socavaría también el principio de que la Junta tiene jurisdicción exclusiva para entender en casos de prácticas ilícitas del trabajo. Por último, e independientemente de consideraciones jurisdiccionales, la determinación de la Junta de no expedir la querella, aunque no sea una orden final, merece gran deferencia por parte de los tribunales por ser la Junta el organismo al cual nuestro ordenamiento ha encomendado la implantación de la política pública enmarcada por la Ley de Relaciones del Trabajo de Puerto Rico.

Contrario a lo que argumenta el señor Martínez, nuestra decisión no tiene el efecto de privarle de su propiedad

sin un debido proceso de ley. Él tuvo la oportunidad de presentar sus argumentos ante la Junta. Desafortunadamente para el señor Martínez, éstos no convencieron al Presidente de ese cuerpo, ni a su Junta en pleno, de que debía instarse una querella contra la Autoridad. Además, si el señor Martínez deseaba otra oportunidad para presentar su reclamo, podía someter la controversia nuevamente a arbitraje, conforme disponía el Art. XXXIX del Convenio Colectivo entonces vigente. A pesar de que el señor Martínez, como Presidente de la Unión, instó una querella en arbitraje basada en los hechos que nos ocupan, dicho foro nunca resolvió la controversia en los méritos. Por el contrario, rehusó asumir jurisdicción en deferencia a que la Junta entendía simultáneamente en un cargo de práctica ilícita del trabajo por los mismos hechos. Al cesar la intervención de la Junta sin que ésta decidiera instar una querella contra la Autoridad, cesó el impedimento que invocó el árbitro para negarse a asumir jurisdicción sobre la controversia.

En vista de lo anterior, *resolvemos que erró el tribunal de instancia al asumir jurisdicción sobre la controversia de marras, por tratarse de una imputación de práctica ilícita del trabajo de la jurisdicción exclusiva de la Junta de Relaciones del Trabajo. Revocamos.*

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita.